IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROBERT ROBINETT                                                    PLAINTIFF

V.                                    NO. 11-3034

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Robert Robinett, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claim for supplemental security income (SSI) under Title XVI of

the Social Security Act (Act).   In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision. See

42 U.S.C. § 405(g).

## I.      Procedural Background:

Plaintiff filed his current application for SSI on July 23, 2008, alleging an inability to

work since April 15, 2008, due to "bad back/arthritis/hepatitis/cancer surgery/emotional." (Tr.

92-94, 108, 113).  An administrative hearing was held on September 23, 2009, at which Plaintiff

appeared with counsel and testified.  (Tr. 21-47).

By written decision dated March 9, 2010, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe - back

disorder and mood disorder.  (Tr. 11).  However, after reviewing all of the evidence presented,

the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any

-1-

impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No.

4.  (Tr. 12).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> lift and carry 20 pounds occasionally and 10 pounds frequently.  The
> claimant can sit for about six hours during an eight-hour workday, and
> can stand and walk for about six hours during an eight-hour workday.
> The claimant can occasionally climb, balance, stoop, kneel, crouch and
> crawl.  The claimant can understand, remember and carry out simple,
> routine and repetitive tasks.  The claimant can respond appropriately to
> supervisors and usual work situations.  The claimant can have occasional
> contact with coworkers and the general public.

(Tr. 13).  With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform

work as a poultry worker, small product assembler, and machine tender.  (Tr. 16).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on March 22, 2001.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.  (Doc.

1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 5).  Both

parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 7, 8).

The Court has reviewed the entire transcript.  The complete set of facts and arguments

are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.

3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports

-2-

the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final

AO72A
(Rev. 8/82)

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff contends that the ALJ erred by concluding Plaintiff retained the RFC to perform occupations such as poultry worker, small product assembler, and machine tender, despite finding Plaintiff unable to perform a full range of light work.  (Doc. 7).

**A.  Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Plaintiff contends that his impairments were disabling.  However, the evidence of record does not support this conclusion.

With respect to Plaintiff's daily activities, in his Function Report - Adult dated July 26, 2008, Plaintiff reported that he prepared his own meals, did light cleaning and laundry, shopped

AO72A
(Rev. 8/82)

when he had the money, and could finish what he started, although it took longer. (Tr. 124-127). Plaintiff testified at the hearing that he was a very good cook, did the grocery shopping, kept the yard up by using a self-propelled push mower, could dress himself, take baths, and did chores around the place. (Tr. 35, 41).

Plaintiff reported in his July 26, 2008 Pain and Other Symptoms Report that he had pain in his back and legs and sometimes in his right arm, pretty much every day. (Tr. 120). In a later Undated Disability Report - Appeal, Plaintiff reported that he was taking Amitriptyline for leg pain and cramps, Bupropion to help stop smoking, Citalopram for depression, Hydrochlorothiazide for blood pressure, Ibuprofen for pain, Lisinopril for blood pressure, Morphine for severe pain, and Trazadone for sleep. (Tr. 148). He reported that he hurt all the time. (Tr. 149). At times, Plaintiff reported that his pain medication did not help, or knocked him out. (219, 206, 195, 194, 188, 288). On August 19, 2008, Plaintiff reported that he was not happy with his pain medication, and that the morphine was not helping. (Tr. 288). He testified at the hearing that he was taking morphine every day, except for the day of the hearing, because he did not want to be "muddle headed" at the hearing. (Tr. 34). However, there is no indication that Plaintiff ever told his treating physician, Dr. Thomas J. Maddock, of the Veteran's Administration, that he suffered from side effects from the morphine. Nor could Plaintiff, in his brief, provide the Court with any supporting evidence of Plaintiff complaining to Dr. Maddock of any side effects of morphine. Therefore, the ALJ was justified in discrediting Plaintiff's complaints of side effects from the morphine. See Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993)(ALJ did not err in discrediting claimant's complaints that the medication caused dizziness, drowsiness, and sleepiness - the record contained no report that claimant ever complained about

-5-

these side effects to any physician).

With regard to Plaintiff's back disorder, a MRI of Plaintiff's lumbar spine and six views of the lumbosacral area, performed on January 12, 2007 and January 22, 2007, revealed:

> Multiple degenerated lumbar disks
> Compression vertebral body L1 which appears to be old
> Facet osteoarthritis.  Normal S1 joints

(Tr. 226).  Dr. Maddock advised Plaintiff on February 26, 2007, that the MRI findings revealed no cord compromise.  (Tr. 207).  On April 5, 2007, Dr. Maddock reported that Plaintiff had adequate range of motion in his extremities.  (Tr. 204).  At that time, Plaintiff was also counseled on diet, exercise, weight control, cholesterol, and tobacco, and it was reported that Plaintiff could continue taking Vicodin, which he tolerated well when he took it with food.  (Tr. 204).  Dr. Maddock also noted that Plaintiff's depression was well controlled on his current Celexa.  (Tr. 204).

On September 21, 2007, Dr. Maddock noted that Plaintiff wanted to try a TENS unit, but there is no record that such was ever accomplished.  (Tr. 195).  Plaintiff also was found to have adequate range of motion in his extremities at this visit.  (Tr. 197).  Again, on August 5, 2008, Dr. Maddock reported that although Plaintiff was having a lot of back pain, he had adequate range of motion in his extremities.  (Tr. 184, 196).  Plaintiff was again counseled on diet, weight control, cholesterol, and exercise, and was verbally advised to quit smoking.  (Tr. 188).  Plaintiff declined tobacco cessation program referral at this visit.  (Tr. 188).

On August 14, 2008, Dr. David L. Hicks, a non-examining consultant, completed a

-6-

Physical RFC Assessment.[1]  (Tr. 232-239).  Dr. Hicks found that Plaintiff could occasionally lift

and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward

pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-

hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and

push and/or pull (including operation of hand and/or foot controls) unlimited, other than as

shown for lift and/or carry.  (Tr. 233).  He also found that Plaintiff could frequently climb ramps

and stairs, ladders, ropes, and scaffolds; balance; kneel; and crawl, and could occasionally stoop

and crouch.  (Tr. 234).   No manipulative, visual, communicative, or environmental limitations

were established.  (Tr. 235-236).  Dr. Hicks concluded that owing to MDI (medical diagnostic

imaging) of lumbar DDD, squamous cell carcinoma of the penis and HCV (hepatitis C virus)

without complication, "RFC is light with postural limitations."  (Tr. 239).

On July 14, 2009, Dr. Maddock reported that Plaintiff appeared to be in pain, and

ambulated with a limp.  (Tr. 268, 271).  However, he also reported that Plaintiff had adequate

range of motion in his extremities.  (Tr. 271).  Plaintiff was once again counseled on tobacco,

diet, weight control, cholesterol, and exercise.  (Tr. 274).  An ALJ may consider a claimant's

failure to stop smoking and start exercising despite doctors orders.  See Lewis v. Barnhart, 353

F.3d 642, 647 (8th Cir. 2003)(doctors opined that a claimant's pain symptoms would be greatly

reduced if she stopped smoking and exercised but she did not comply).

At the hearing, Plaintiff testified that he had only seen Dr. Maddock for his back

problems, and that the next step would be a neurologist.  (Tr. 33).  Plaintiff had discussed surgery

[1]The Court notes that in his decision, the ALJ made reference to a consultative general physical examination conducted by Dr. Mahlon O. Maris on February 8, 2007.  However, no such examination is contained in the transcript.  Since this pre-dates the SSI application date, such omission is harmless.

with Dr. Maddock and told him that when he could not walk, they could fuse his back together. (Tr. 33).

With respect to Plaintiff's depression, on April 5, 2007, it was reported as well controlled on Celexa. (Tr. 204). On September 21, 2007, Plaintiff was reported as doing well on his medications. (Tr. 198). On September 24, 2008, a Mental RFC Assessment was completed by Paula Lynch. (Tr. 245-249). Dr. Lynch found Plaintiff to be moderately limited in four out of 20 categories, and not significantly limited in 16 out of 20 categories. (Tr. 245-246). On the same date, Dr. Lynch completed a Psychiatric Review Technique form. (Tr. 249-262). Dr. Lynch found Plaintiff had a mild degree of limitation in restriction of activities of daily living and in maintaining concentration, persistence, or pace, and a moderate degree of limitation in difficulties in maintaining social functioning. (Tr. 259). She gave Plaintiff a semiskilled rating. (Tr. 261). In addition, at the hearing, Plaintiff testified that he was not seeing a counselor for depression. (Tr. 31).

Based upon the foregoing, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B.    RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v.

AO72A
(Rev. 8/82)

Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis, 353 F.3d 642 at 646. "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when the ALJ determined Plaintiff could perform work at the light level with some limitations.

As noted in the discussion above, the medical records reflect that Plaintiff had adequate range of motion in his extremities, and Dr. Hicks' Physical RFC Assessment revealed that Plaintiff could perform light work with postural limitations. Plaintiff's capacity to perform light work with postural limitations is supported by the fact that the medical evidence does not indicate that Plaintiff's examining physicians placed restrictions on his activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). The ALJ's RFC determination is also supported by the findings of the non-examining medical consultants, who opined that Plaintiff could perform light work with limitations. (Tr. 201-208, 251). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

C.      **Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a poultry worker, small product assembler, and machine tender.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

IV.    **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 4th day of June, 2012.


/s/ Erin L. Setser
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE


-10-